## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 24-CR-268 (RDM) |
| | : | |
| v. | : | 18 U.S.C. § 111(a)(1) |
| | : | |
| KYLE ANDREW CAMPBELL, | : | |
| | : | |
| Defendant. | : | |
| | : | |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, KYLE ANDREW CAMPBELL, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.     The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.     On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3.     On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows

and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.     Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

*The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.     CAMPBELL and a companion traveled to Washington, D.C., on January 6 from Columbus, OH. They arrived in D.C. around noon, parked south of the National Mall, and began walking north toward the "Stop the Steal" rally they knew was scheduled to take place at the Ellipse.

9.     On their way to the rally, they encountered large groups of people walking toward the US. Capitol. At this point, CAMPBELL and his companion changed direction and walked toward the Capitol Building.

10.     CAMPBELL was near the initial breach of the Peace Circle police barricade and was aware that the Capitol was a Restricted Area where he was not allowed to go. CAMPBELL (outlined in yellow) trampled over snow fencing erected by U.S. Capitol Police as part of the Restricted Perimeter around the U.S. Capitol. (*See* Image 1).



Image 1 (CAMPBELL walking past fencing)

11.     After the initial breach, CAMPBELL made his way to the southern area of West Plaza, where he stood at the front of the mob directly across from police officers. (see Image 2 below).



Image 2 (CAMPBELL on West Plaza)

12.    CAMPBELL stayed at the front of the mob for at least 20 minutes. While at the front, CAMPBELL assaulted a U.S. Capitol Police officer who was protecting the Capitol Building from the mob.

13.    CAMPBELL was face-to-face with that USCP officer, who was carrying a riot shield. CAMPBELL was pushed from behind into the officer, who pushed back with the shield. At that point, under his own power, CAMPBELL forcibly rushed the officer and hit the officer and his shield several times before retreating back into the crowd. (*See* Images 3-6).



Image 3 (CAMPBELL pushing against a USCP officer's shield)



Image 4



Image 5 (Close-up of CAMPBELL pushing into officers)



Image 6

14.    CAMPBELL continued to remain on the West Plaza area for at least another hour.

15.    After the Northwest Stairs leading up to the Upper West Terrace were breached, CAMPBELL and his companion proceeded to the Upper West Terrace where they continued to remain despite their knowledge that the area was not open to the public. (*See* Image 7).



Figure 7

### *Elements of the Offense*

16.    The parties agree that assaulting, resisting, or impeding certain officers in violation of 18 U.S.C. § 111(a)(1), requires the following elements:

a.    The defendant assaulted, resisted, opposed, impeded, impeded, intimidated, or interfered with an officer from the U.S. Capitol Police;

b. The defendant did such acts forcibly;

c. The defendant did such acts voluntarily and intentionally;

d. The person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or employee of the United States who was then engaged in the performance of their official duties; and

e. The defendant made physical contact with that officer or acted with the intent to commit another felony.

### *Defendant's Acknowledgments*

17.    The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he, voluntarily and intentionally, forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with the U.S. Capitol Police officer referenced in Paragraphs 12 and 13 (and images 3 through 6), above, while that officer was engaged in and on account of the performance of their official duties. Campbell did this by making physical contact with said officer and acted with the intent to commit another felony; that is, obstructing officers during a civil disorder in violation of Title 18, U.S.C., Section 231(a)(3).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Kyle M. McWaters*
Kyle M. McWaters
Assistant United States Attorney
D.C. Bar No. 241625
601 D Street NW
Washington, DC 20003
(202) 252-6983
kyle.mcwaters@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, KYLE ANDREW CAMPBELL, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: _May 28th, 2024_

_____
Kyle Andrew Campbell
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: __5/30/2024__

_____
Michelle Peterson
Attorney for Defendant